IN THE UNITED STATES DISTRICTCOURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| ADELA KNIGHT, DAN LEWALLEN, PAUL MEYER, ZHIHONG TANG AND MICHAEL WU<br>Plaintiffs | § § § § § | |
| VS | § § § § | Civil Action No. 4:20-cv-624<br>Jury |
| ROBINSON RIDGE HOMEOWNERS' ASSOCIATION, INC., ALEX ROMERO, BEN (BENITO) GONZALEZ, KACIE PACKER, KIM RIVERS AKA KIMBERLY S. WILSON, CANDISS YOUNG and 4CSONS GROUP, LLC dba 4SIGHT PROPERTY MANAGEMENT<br>Defendants | § § § § § § § § § | |

**PLAINTIFFS' FIRST AMENDED COMPLAINT**

NOW COME Plaintiffs Adela Knight, Dan Lewallen, Paul Meyer, Zhihong Tang and Michael Wu, complaining of Defendants Robinson Ridge Homeowners' Association, Inc., Alex Romero, Ben (Benito) Gonzalez, Kacie Packer, Kim Rivers aka Kimberly S. Wilson, Candiss Young and 4Sight Property Management, and for cause of action would show the Court the following:

**Plaintiffs**

1. Adela Knight, Plaintiff, is an individual. The last three digits of Plaintiff's driver's license number are 913. The last three digits of Plaintiff's Social Security number are 236.

2.  Dan Lewallen, Plaintiff, is an individual. The last three digits of Plaintiff's driver's license number are 915. The last three digits of Plaintiff's Social Security number are 527.

3.  Paul Meyer, Plaintiff, is an individual. The last three digits of Plaintiff's driver's license number are 917. The last three digits of Plaintiff's Social Security number are 523.

4.  Zhihong Tang, Plaintiff, is an individual. The last three digits of Plaintiff's driver's license number are 639. The last three digits of Plaintiff's Social Security number are 833.

5.  Michael Wu, Plaintiff, is an individual. The last three digits of Plaintiff's driver's license number are 298. The last three digits of Plaintiff's Social Security number are 547.

**Defendants**

6.  Defendant Robinson Ridge Homeowners' Association Inc. Is a Texas corporation which has been served and has appeared herein.

7.  Defendant, Alex Romero, is an individual who has been served and has appeared herein.

8.  Defendant, Ben (Benito) Gonzalez, is an individual who has been served and has appeared herein.

9.  Defendant, Kacie Packer, is an individual who has been served and has appeared herein.

10. Defendant, Kim Rivers aka Kimberly S. Wilson, is an individual who has been served and has appeared herein.

11. Defendant, Candiss Young, is an individual who has been served and has appeared herein.

12.  Defendant, 4CSons Group, LLC dba 4Sight Property Management is a corporation which has been served and has appeared herein.

### Venue

13.  Venue is proper in this county in that the events giving rise to this cause of action occurred within Denton County.  Additionally one or more of the Defendants reside in Denton County.

### Jurisdiction

14.  The Court has jurisdiction because a question of federal law exists in the lawsuit. The damages sought in this suit are within the jurisdictional limits of the Court.   The Court has personal jurisdiction over the Defendants as they are residents of, or doing business in, Texas.

### Facts

15.  Plaintiffs own property which is part of the Robinson Ridge Homeowners' Association, Inc. (RRHA).

16. All of the property located in RRHA is in Denton County, Texas.

17. On March 16, 2020, Alex Romero signed and subsequently recorded in the real property records of Denton County, Texas the document attached hereto as Exhibit A *Rules and Regulations Governing Leasing and Rental Properties Robinson Ridge Homeowners' Association, Inc.* (Rules)[1].

18. The Rules were improperly passed, are improper on their face, have a disparate impact on minorities, violate housing laws, violate property owner association laws, are not

---

[1] A copy of the Rules is attached hereto as Exhibit A, and is incorporated herein as though set forth at length.

reasonably related to resolve any ongoing issue or problem within the community, are vague and arbitrary, and tortuously interfere with prospective business of Plaintiffs.

19.   Upon inquiry Plaintiffs were informed that each of the following members who were board members at the time participated in the scheme to pass the Rules.   Because these members exceeded their authority, conspired to violate the law together, and acted in less than good faith, they are being sued individually: Alex Romero, Ben (Benito) Gonzalez, Kacie Packer, Kim Rivers aka Kimberly S. Wilson, Candiss Young.

20. 4Sight Property Management apparently was recently retained by Defendants in an undefined role for RRHA however, rather than merely manage RRHA, it is believed 4Sight actively encouraged and/or participated in the passing of the impermissible Rules.

21.   The Rules permanently added restrictions to limit the residential use defined in the Master Declaration

22.. These alterations require HOA member vote and therefore are invalid.

23. The Rules were never shared with members to review and vote prior to the vote of the board, the notice for that meeting was not sufficiently specific to provide adequate notice of the changes contemplated.

24. In fact evidence suggests, that the individual Defendants decided what they wanted to do, and engaged in actions and conduct far in advance of the purported voted in furtherance of their scheme, all the while suppressing their intended acts from the HOA members.

25. The Board violated Declaration Article XI 11.2 and Texas Property Code 209.0041 (h) Declaration ARTICLE XI 11.2 Amendments to Declaration. This Declaration may be amended

by a 67% vote, …This violates Texas Property Code 209.0041(h) "Except as provided by Subsection (h-1) or (h-2), a declaration may be amended only by a vote of 67 percent of the total votes allocated to property owners entitled to vote on the amendment of the declaration, in addition to any governmental approval required by law."

26. The prior declarations filed in 2017 by Defendant Alex Romero purported to change this were also in contravention of the By-Laws and were attempted to be effected without a proper vote at the time.

27. The Rules have a disparate impact on minorities and are racist.

28. The Rules specifically attempt to limit the number of houses that may be lease

29. No report was performed or shared with homeowners suggesting that a maximum rental rate of 30% is ideal for the RRHA. In fact, that rate is well below several averages in Texas. Killeen Texas has a rental rate of 56% of properties.

30. The 30% cap is arbitrary, and adversely affects young minorities which statistically rent in higher numbers than older non-minorities.

31. Texas population growth is increased by minorities.

32. By arbitrarily limiting opportunities to rent to minorities the Rules adversely affect minorities and limit minority access to homes in the neighborhood.

33. The Rules are therefore improper under Federal Fair Housing Act Sec. 804. [42 U.S.C. 3604].

34. The Rules put draconian and unreasonable restrictions on tenant rentals involving criminal background.

35. The Rules prohibit the leasing to a tenant who has almost any criminal record including a misdemeanor theft even if over a decade and half ago no matter how much or what was stolen.

36. The Rules even prohibit the rental to anyone who has been convicted of a misdemeanor crime involving illegal drugs.

37. An even cursory review reveals the racist agenda to keep minorities (or certain minorities) from living in the RRHA.

38. In 2014, African Americans constituted 2.3 million, or 34%, of the total 6.8 million correctional population. African Americans are incarcerated at more than 5 times the rate of whites. The imprisonment rate for African American women is twice that of white women. Nationwide, African American children represent 32% of children who are arrested. Though African Americans and Hispanics make up approximately 32% of the US population, they comprised 56% of all incarcerated people in 2015. In the 2015 National Survey on Drug Use and Health, about 17 million whites and 4 million African Americans reported having used an illicit drug within the last month. African Americans and whites use drugs at similar rates, but the imprisonment rate of African Americans for drug charges is almost 6 times that of whites. African Americans represent 12.5% of illicit drug users, but 29% of those arrested for drug offenses and 33% of those incarcerated in state facilities for drug offenses.[2]

39. There is no rationale why a thirty-eight year old adult who was convicted of stealing $120.00 in groceries nineteen years earlier should not be rented to, but that is the plain language of the Rules.

---

[2] NAACP CRIMINAL JUSTICE FACT SHEET.

40. Note in their zealotry to prevent anyone who is different or they do not like from moving into RRHA, the Defendants literally did not even finish the litany of minor convictions that would disqualify a tenant - apparently they want that to be open ended.

41. The Rules are therefore improper under Federal Fair Housing Act Sec. 804. [42 U.S.C. 3604].

42.  The Rules attempt to require leases and tenants be screened by the Board before a lease could be entered into.  This violates Texas Property Code 209.016.

43. The Rules attempt to require leases and tenants to be screened which even if that did not violate Texas Property Code 209.016..

44. The Rules do not provide reasonable guidance or measurement as to what standards will be imposed.

45. There is no provision for how often the board would get together to make decisions, which makes leasing to tenants a practical impossibility.

46. The Rules would prevent any owner in RRHA from listing and renting their home on Air BNB, or at home or Vacation by Owner, without any finding that such causes a problem, and without any adequate notice to the members of RRHA .

47. The Rules attempt to levy a fine for anyone who leases a home greater than 30% without any mechanism for an owner to know what percentage RRHA properties are at, and whether they would be violating it.

48. Additionally, the Rules make no mention as to how the 30% will be allocated. Would a member be forced to non-renew a lease because the 30% would be exceeded, or would

renewals take precedence over another member looking to lease their home for the first time, which in essence creates a monopoly of the current leasing members and an incentive for them to keep their properties leased at all cost, even if they have to decrease the rental rates.

49. The Rules attempt to stipulate egregious fees and penalties.

50. The Rules and Regulations violate Declaration Article 5.10 (a) by imposing an excessive penalty. The proposed fine amounts far outweigh any type of expenses that may be incurred by the HOA for the listed violations, which is in violation of Article 5.10(a).

51. Furthermore, the $1,500 and $250 fine on the first violation notice violates Texas Property Code 209, Section 209.006, which mandates the HOA to give written notice via certified mail to the homeowner before levying any fine.

52. The Defendants were aware of the likely inappropriateness and wrongfulness of the Rules, as they attempted to put what is referred to as a savings clause or blue line provision, practically acknowledging that they have overstepped their bounds and requesting the Court attempt to write a correct set of rules, This is not the function of the Court, to allow an egregious overstep of authority by individuals with their own agenda which does not benefit the community and then force the Court to try to cobble together that begins to both make sense and be lawful.

## Declaratory Judgment

53. The Plaintiffs sue for a declaratory judgment that the Rules are without effect and are rescinded. The Rules were passed in contravention of the By-Laws of the RRHA and Texas and Federal Law, have a disparate impact on minorities, violate housing laws, violate property owner association laws, are not reasonably related to resolve any ongoing issue or problem

within the community, are vague and arbitrary, and tortuously interfere with prospective business of Plaintiffs.

### Tortious Interference With Current And Current Contracts

54. Some of the Plaintiffs have leases and will seek leases.

55. Prospective tenants would theoretically have to be subjected to impermissible scrutiny and delay, which would render the ability to lease properties extremely difficult or impossible.

56. Defendants have greatly decreased the desirability and value of any of Plaintiffs houses as a sale.

57. Accordingly there are existing contracts which are subject to these Rules, Defendants have engaged in willful and intentional acts of interference, and the defendants' intentional acts of interference was a proximate cause of actual damages to the plaintiffs.

58. Defendants have specifically acted because there is a "reasonable probability" that the plaintiffs would have entered into the prospective relationship or contract by leasing.

59. Defendants' efforts are "independently tortious or wrongful" acts by the Defendants designed to prevented the relationships from occurring.

60. Defendants did such act with a conscious desire to prevent the relationship from occurring, or knew that the interference was certain or substantially certain to occur as a result of the defendant's conduct.

61. The plaintiff suffered actual harm or damage as a result of the Defendants' interference.

62. Plaintiffs have been economically harmed with in the jurisdictional limits of the Court.

### Negligence

63. Defendants owed Plaintiffs as members a duty to not pass rules and regulations that were arbitrary, capricious, or which violated state and federal laws, and which were not discriminatory or vague. Defendants owed Plaintiffs a duty to act as a reasonable homeowners' board would. As set forth herein, Defendants violated that duty many times over and proximately caused Plaintiffs damages. Accordingly Plaintiffs sue for negligence.

### Common Law Civil Conspiracy

64. Defendants desired to accomplish an unlawful purpose or a lawful purpose by unlawful means; had a meeting of minds on the object or course of action; and committed one or more unlawful, overt acts; and Plaintiff suffered damages as a proximate result.

### Temporary & Permanent Injunction

65. Plaintiffs seek a temporary injunction preventing the application or enforcement of the Rules during the pendency of this litigation, and a permanent injunction after a declaration that the Rules are invalid and unenforceable.

### Knowing, Willful, or Intentional Conduct

66. Defendants acts and omissions were conducted intentionally and knowing, or with willful disregard for the rights of others.

### Attorneys' Fees

67. Plaintiffs sue for reasonable attorneys' fees under Chapter 37 of the Texas Civil Practice and remedies Code.

**Jury Demand**

68. Plaintiffs hereby request a jury trial.

**Prayer**

69. Plaintiffs pray that citation be issued commanding Defendants to appear and answer herein and that Plaintiffs be awarded judgment against Defendants, jointly and severally, for the relief requested herein and for all other relief to which Plaintiffs are entitled both in equity and at law.

Respectfully submitted,

/s/ Andrew W. Seibert
Andrew W. Seibert
SBOT 00788385
The Seibert Law Firm PC
6001 W. Interstate 20, Ste 205
Arlington, TX 76017
T 817-999-4309
F 888-377-1880
andrew@mytexaslawyer.com

Certificate of Service

I certify that at true and correct copy opf the foregoing was served on opposing counsel through E-Service on September 18, 2020.

/s/ Andrew W. Seibert
Andrew W. Seibert